## Camp *vs* Prather, &c,

### ERROR TO THE HICKMAN CIRCUIT.

#### *Ejectment.    Entries.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS action of ejectment was brought on the demise of Camp, claiming as patentee of two quarter sections of land lying west of the Tennessee river, by patents dated in 1836, against Prather and Jones, claiming under a patent dated in 1826, granting to Bazzel Prather, assignee

of Richard Brashear, 1,000 acres of land in the district set apart for the officers and soldiers of the Virginia State Line, in consideration of part of a Land Office Military Warrant, entered August 6th, 1784, and surveyed March 20th, 1825. The patent of the defendant being the oldest, the plaintiff read in evidence the entry of Richard Brashear, and relied upon the point that the patent covers no part of the land appropriated by the entry, and is therefore wholly void, under the act of 1820, authorizing the military entries west of the Tennessee, to to be surveyed and carried into grant. The entry of Brashear, dated August 6th, 1784, calls to begin "due south of the town of Columbia, on the boundary line of Virginia and North Carolina, to run eastwardly with the line 400 poles, unless interrupted by elder entries, and in that case to begin on the line to the east of such entries, and run 400 poles east on said line, and then at right angles for quantity." The survey, bearing date March 20th, 1825, was also read, beginning due south of the town of Columbia, on the State line, and running east, &c. according to the calls of the entry; and it being shown that the State line as fixed in 1820, by the States of Kentucky and Tennessee, from the Tennessee river to the Mississippi, and on which the land was surveyed, is about ten miles south of what would be a continuation of Walker's line, run in 1779–80, as far as the Tennessee river, and upon proof, that from 1821 up to the time of trial, it was generally understood that Walker's line, if continued without change of course, would pass about en miles north of the actual State line, it was contended in the Circuit Court, and is now contended, that the entry of Brashear should be understood as calling for the continuation of Walker's line as the boundary line between Virginia and North Carolina, and that the survey upon the true State line is therefore entirely variant from the entry.

Conceding all that can be assumed as the basis of this argument, that the locator of this entry may have supposed that Walker's line, as far as it went, that is, to the Tennessee river, was the true boundary between Virginia and North Carolina, and that therefore a continuation of

that line would be the true boundary to the Mississippi, it may be a consequence that the locator supposed, if he thought upon the question at all, that the land located by this entry would lie upon Walker's line continued. But as that line had not in fact been run west of the Tennessee, as no body at the date of the entry knew or even conjectured where it would run in the vicinity of this location, near the bank of the Mississippi, as the entry does not call for that line, but for the boundary line between the two States, and as in point of law and fact, the true line was in latitude 36 degrees 30 minutes north, where it has been actually run, and there was not at the date of the entry, nor afterwards until the ascertainment and authoritative adoption of this true line in 1819 and 1820, any other line, actual or reputed, it would be most unreasonable, first to conjecture that the locator intended to refer to Walker's line, and then upon that mere conjecture to conclude that the entry could not be properly surveyed on the true line.

It is not necssary that the locator should have actually seen, or even in his own mind have fixed upon the precise piece of land which he intends to appropriate. It is sufficient if in his entry he give such a description of its shape and locality as will enable others who may desire to appropriate the adjacent land, to ascertain with reasonable certainty what has been before appropriated, which implies the requisition that the description shall be such as will enable one properly skilled, to ascertain the locality and extent of the land attempted to be appropriated by the prior entry, and in fact, to make a survey of it corresponding with the entry. The intention of the locator is only material so far as it is indicated by the terms used in describing the land. If his description comes up to the requisitions which have been stated, the land described is appropriated by the entry, although he may have supposed that he was describing and have intended to appropriate other lands. It is the terms of the entry and not the private intention or opinion of the locator which fix the location.

It is true that an entry, clear and unambiguous on its face, and apparently sufficient, may in applying it to the ob-

It is a valid entry which gives such description of its shape and locality as will enable others who may desire to appropriate the adjacent land to ascertain with reasonable certainty what has been before appropriated. It is the terms used in the entry and not the private intention or opinion of the locator, which is to fix the location.

CAMP
vs
PRATHER, &c.

jects called for, be found subject to a latent ambiguity, arising from the correspondence of two or more objects with the terms of a particular call or description; and the uncertainty thus produced may, unless removed by some decisive circumstance, make the entry wholly ineffectual. But the call in this entry, for the boundary line between the two States, cannot be subject to this objection, because there never was but one boundary line in law or fact, from the Tennessee to the Mississippi, and there never was any other reputed boundary. At the date of the entry and until after the true line was run and established, there were no white inhabitants in that region. There is no evidence that any of the few individuals who were engaged in making entries for the officers and soldiers, knew at what point Walker's line struck the Tennessee river. And it may be regarded as certain that none of them, nor any others, for many years afterwards, knew or attempted to define the position of Walker's line continued, either on the Mississippi or in the country between it and the Tennessee. There was then but one object or line to answer to the call for this boundary line, and as the position of the line, though not ascertained at the date of the entry, was fixed by the charter and laws of Virginia, at thirty six degrees thirty minutes north latitude, the entry could not, at its date, have been properly applied to any other line.

The line at thirty six degrees thirty minutes north, being ascertainable with reasonable certainty, by mathematical instruments and calculation, we suppose that the call to begin at the intersection of a line running due south from the town of Columbia, with a line at thirty six degrees thirty minutes north latitude, would have been a sufficient call, and that the fact that a line had been run in another part of the country nearly 100 miles distant, which was intended to be on that parallel and which was adopted by public authority as being so, would neither change the true line of latitude, nor deprive the locator of his right to have his land surveyed upon that line agreeably to the precise words of his entry. The fact referred to might furnish a deceptive mode of ascertaining the point called for as a beginning, to those who should

The entry calling to begin at the intersection of a line running due south from the town of Columbia with the State line, which is the line of 36 deg. 30 minutes north latitude, but which had not then been run and marked, held to be a valid entry.

choose to resort to it.   But being only one means and an uncertain one, of ascertaining it, the mere possibility that a subsequent locator might resort to the deceptive instead of the true means of ascertainment, would seem to be scarcely a sufficient objection to the certainty of the location.   Even the conclusive adoption by the State of Virginia, of Walker's line as far as run, as the boundary line, and upon the supposition that it was the line of thirty six degrees thirty minutes north, would not have precluded the State nor any of her citizens, in subsequently enquiring for a point on the Mississippi in the latitude of thirty six degrees thirty minutes north, from resorting to the proper astronomical observations for ascertaining the true point, though the enquiry were made with the especial view of finding or of fixing the southern boundary of the State at that point.   It could not have been supposed that the State in any future attempt to fix the boundary line from the Tennessee to the Mississippi, would have rested satisfied with directing a mere continuation of Walker's line, without any resort to the original and true means of ascertaining the line to which, by her charter and her laws, her limits extended.   Nor can it be assumed that an individual of competent skill and means, who desired to ascertain a point on or near the Mississippi, in the line of thirty six degrees thirty minutes north, would have gone to the Tennessee river to find there the termination of Walker's line, and have continued it for many miles through a wilderness, as the means of attaining his object.   The more reasonable presumption would seem to be, that he would resort to the direct means of ascertaining it on the Mississippi, as being not only the most certain, but also the most convenient.

The real question as to the sufficiency of an entry calling for a line of latitude not ascertained nor having a reputed position near the particular point, arises not upon any ambiguity, patent or even latent, but from the fact that the ascertainment of the point called for, so as to give actual location to the entry, or to find the particular land described by it, requires a resort to unusual means not ordinarily resorted to by locators or surveyors, nor

from the date at
which the boun-
dary was fixed
by the proper au-
thorities.

ordinarily within their reach. The question is, whether an entry requiring such means for ascertaining its precise position on the ground, should be sustained. The objection is not less if the locator or surveyor were required to ascertain the point where Walker's line terminated on the Tennessee, and to continue it thence to the Mississippi, than if he were required to ascertain the latitude at once on the Mississippi. But in setting apart this district, extending to her southern boundary, and authorizing its appropriation by the officers and soldiers of her State troops, Virginia intended to subject the whole and every part, to such appropriation. And as the southern boundary was not demarked nor otherwise ascertained, but rested on the call for the line of thirty six degrees thirty, locators desiring to locate lands adjacent to it, must have been expected to ascertain it at their peril, or must have been allowed to call for it without actual ascertainment of its position, as a proper object, by reference to which their locations might be fixed. In either alternative the call for the boundary line would be sufficient. And whatever might be said of an entry calling for a line of latitude which had not been ascertained, we cannot doubt that a call for the boundary line of the State which if not at the time ascertained, must of course have been ascertainable, and expected to be ascertained by public authority, whenever the public interest should require it, is to be regarded as good. True there might be great hazard in attempting to survey such an entry before the State boundary should be fixed by public authority, and considered as an entry calling for the State boundary, wherever it should be fixed, in which sense we should still deem it good, it might be entitled to take date only from the time of fixing the boundary, because until then it would not point out any specific land to be appropriated.

But we perceive no other objection or disadvantage necessarily incident to such a call, and as there was a suspension of all locations and surveys in the district west of the Tennessee, from 1784 until 1820, after the boundary had been authoritatively fixed; and as the survey was in fact, made upon the boundary as then fixed, and upon

the line of thirty six degrees thirty minutes, which was the legal boundary at the date of the entry, and is the actual boundary; and as there was no other line having the reputation of being either the boundary line or the line of thirty six degrees thirty minutes, we are satisfied that the entry was properly surveyed, and that the patent conforming to the survey, corresponds also with the entry and was, therefore, valid and effectual to invest the patentee with the legal title, and to bar a recovery on a junior patent.

Wherefore, the judgment is affirmed.

*Husbands* for plaintiff; *Pirtle and E. I. Bullock* for defendants.